Filed 8/15/24  P. v. Moore CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B331126 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA037355) |
| v. | |
| MERRICK J. MOORE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Reversed with directions.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

When the trial court sentenced Merrick J. Moore to state prison in 1997, it imposed but stayed one Penal Code section 667.5, subdivision (b) prior prison term enhancement.[1] The Legislature later deemed such prior prison enhancements legally invalid and, in section 1172.75, created a procedure for the resentencing of individuals whose sentences included the enhancements. In 2023, the trial court found Moore ineligible for this resentencing relief because the prior prison term enhancement was stayed in his case. Moore now appeals. We conclude section 1172.75 applies to sentences that include stayed prior prison term enhancements. We therefore reverse the trial court order and remand for resentencing under section 1172.75.

## BACKGROUND[2]

A jury found Moore guilty of two counts of kidnapping during the commission of a carjacking (§ 209.5, subd. (a); counts 1 & 2); carjacking (§ 215, subd. (a); count 3); two counts of kidnapping (§ 207, subd. (a); counts 4 & 5); residential burglary (§ 459; count 6); and unlawful driving or taking of a vehicle (Vehicle Code section 10851, former subd. (a); count 7). The jury also found true several alleged enhancements, including, as

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    We do not include a summary of the facts underlying Moore's conviction as they are not relevant to the issue on appeal.

relevant here, that he had served one prior prison commitment within the meaning of section 667.5, former subdivision (b).[3]

The trial court sentenced Moore to a term of life plus 37 years to life. The court imposed but stayed the one-year prior prison term enhancement.

In 1999, a panel of this court vacated the convictions on count 3 for carjacking and counts 4 and 5 for kidnapping. (*People v. Moore* (1999) 75 Cal.App.4th 37, 47 (*Moore*).)[4] The court also vacated one of two section 667, subdivision (a)(1) enhancements imposed by the trial court and modified the calculation of presentence custody credits.[5] (*Ibid*.) The judgment was otherwise affirmed. (*Ibid*.) On remand, the trial court vacated the sentences relating to counts 3, 4, and 5 and struck one of the two section 667, subdivision (a)(1) enhancements. The amended abstract of judgment reflected a sentence of life plus 32 years to life. It also reflected the previously imposed but stayed

---

[3] This prior prison term enhancement was alleged as to all seven counts.

[4] In an unpublished portion of the *Moore* opinion, the court determined reversal of the convictions on counts 3, 4, and 5 was required because the crimes were lesser included offenses of the crimes charged in counts 1 and 2. The trial court also concluded that the imposition of consecutive enhancements for prior serious felony convictions under section 667, former subdivision (a), was error because the prior convictions were brought and tried in a single proceeding.

[5] The section 667, subdivision (a)(1) and section 667.5, subdivision (b) enhancements were based on different convictions. The section 667, subdivision (a)(1) enhancement was based on a 1993 robbery, and the enhancement under section 667.5, subdivision (b) was based on a 1992 vehicle theft.

section 667.9, subdivision (b) prior prison term enhancement, which was not at issue on appeal.[6]

The Legislature subsequently declared section 667.5, subdivision (b) prior prison term enhancements imposed prior to January 1, 2020, legally invalid, except those arising from convictions of sexually violent offenses.  (§ 1172.75, subd. (a).)

In April 2023, Moore filed a petition for resentencing under section 1172.75.  The trial court summarily denied the petition.  The court first noted that the section 1172.75 procedure does not provide for a direct petition from a defendant and concluded it therefore had no jurisdiction to consider Moore's petition.  The court nonetheless considered Moore's eligibility for relief because his name was included on a list the court had received from the California Department of Corrections and Rehabilitation (CDCR) identifying individuals potentially eligible for section 1172.75 resentencing.  The court concluded Moore was not eligible for resentencing because his section 667.5, former subdivision (b) enhancement sentence was stayed.  Moore timely appealed.

## DISCUSSION

### I.     Section 1172.75

Before January 1, 2020, section 667.5, subdivision (b), required courts to impose a one-year sentence enhancement for each prior prison or county jail term the defendant served if the defendant had not remained free of custody for the preceding five

---

[6]     In 2021, the trial court amended the abstract of judgment to correct its error of imposing two section 667.9, subdivision (b) enhancements, attached to counts 1 and 2 respectively, since the enhancement should have been applied once to the entire case, rather than to each count.  This correction did not affect the total sentence, which remained the same.

years.  (§ 667.5, former subd. (b); *People v. Jennings* (2019) 42 Cal.App.5th 664, 681 (*Jennings*).)  Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136) amended section 667.5, subdivision (b), by limiting the enhancement to prior prison terms for sexually violent offenses only.  (§ 667.5, subd. (b); *Jennings*, at p. 681.)

In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483), which made Senate Bill 136's changes to the law retroactive (Stats. 2021, ch. 728, § 1), and added former section 1171.1, now section 1172.75, to the Penal Code.  (Stats. 2021, ch. 728, § 3; Stats. 2022, ch. 58, § 12.) Section 1172.75, subdivision (a), provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid."

Pursuant to section 1172.75, subdivision (b), the CDCR and county jail administrators "shall identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a) . . . ."  The CDCR and county jail administrators must then provide each person's information to the sentencing court that imposed the enhancement.  The sentencing court "shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a).  If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence

5

and resentence the defendant." (§ 1172.75, subd. (c).)[7] The resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) In addition, the resentencing court "shall apply . . . any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2); *People v. Christianson* (2023) 97 Cal.App.5th 300, 314–317, review granted Feb. 21, 2024, S283189 (*Christianson*).)

## II. Moore Is Entitled to Resentencing Under Section 1172.75

The issue here is whether resentencing pursuant to section 1172.75 is available when the original sentence includes a section 667.5, subdivision (b) prior prison term enhancement that was imposed but stayed. In *People v. Rhodius* (2023) 97 Cal.App.5th 38, review granted February 21, 2024, S283169 (*Rhodius*), the court determined section 1172.75 does not require

---

[7] Section 1172.75, subdivision (b) gave the CDCR and county jail administrators two deadlines for providing the information: "(1) By March 1, 2022, for individuals who have served their base term and any other enhancements and are currently serving a sentence based on the enhancement. . . . [¶] (2) By July 1, 2022, for all other individuals." Similarly, sentencing courts were to complete review and resentencing for affected individuals: "(1) By October 1, 2022, for individuals who have served their base term and any other enhancement and are currently serving a sentence based on the enhancement. [¶] (2) By December 31, 2023, for all other individuals." (§ 1172.75, subd. (c)(1)–(2).)

6

resentencing when the prior prison term enhancement was stayed.  Other courts have come to the opposite conclusion. (*People v. Mayberry* (2024) 102 Cal.App.5th 665, review granted Aug. 14, 2024, S285853 (*Mayberry*); *People v. Renteria* (2023) 96 Cal.App.5th 1276 (*Renteria*); *Christianson*, *supra*, 97 Cal.App.5th 300; *People v. Saldana* (2023) 97 Cal.App.5th 1270, review granted Mar. 12, 2024, S283547 (*Saldana*).)  The issue is currently pending before the California Supreme Court.

The question is one a reviewing court considers "de novo, under well-settled standards of statutory interpretation." (*Christianson*, *supra*, 97 Cal.App.5th at p. 308.)  Our task is to determine the Legislature's intent to effectuate the law's purpose. We examine the statutory language, giving the statute's words a plain and common sense meaning; we consider the entire statute in order to construe the words in question in context; and, if the statutory language is ambiguous, we may consider other extrinsic aids, such as legislative history.  (*People v. Reynoza* (2024) 15 Cal.5th 982, 989–990; *Rhodius*, *supra*, 97 Cal.App.5th at p. 43.)

In *Rhodius*, the court held the word "imposed" in section 1172.75, subdivision (a), indicates enhancements that were " 'imposed and executed.' " (*Rhodius*, *supra*, 97 Cal.App.5th at p. 44.)  The court reasoned the section 1172.75, subdivision (d)(1) requirement that resentencing shall result in a lesser sentence than the one originally imposed "necessitates the conclusion that the repealed enhancement increased the length of the sentence.  The only way for the repealed enhancement to have increased the length of a sentence is for the enhancement to have been imposed and executed." (*Rhodius*, at p. 44.)  The court further reasoned that reading section 1172.75 to include sentences with stayed prior prison term enhancements would

7

require a sentencing court "to arbitrarily lower a sentence simply because the judgment contained a stayed enhancement." (*Ibid.*)

The *Rhodius* court additionally considered the legislative history of Senate Bills 136 and 483. This history indicates the laws were intended to address issues such as double punishment for prior convictions and the longer periods of incarceration to which Black and Latino individuals disproportionately have been sentenced. The Legislature also sought to reallocate " 'wasteful' spending from imprisonment to community-based services." (*Rhodius*, *supra*, 97 Cal.App.5th at p. 46.) The *Rhodius* court reasoned these legislative motivations "presuppose[ ] that the sentencing enhancements are, in fact, creating longer periods of incarceration," and that the "freeing of funds through the repeal of sentencing enhancements presupposes the affected inmates will spend less time incarcerated." (*Id.* at p. 47.) Similarly, the court noted the legislative history of Senate Bill 483 specifically, which was to provide relief to incarcerated individuals " 'still burdened by mandatory enhancements' " that California had already " ' "deemed unfair and ineffective." ' " (*Id.* at p. 46.) The court reasoned that an "inmate whose sentence was imposed and stayed is not actually serving any time based on a repealed statute, nor are they separated from their families because Senate Bill 136 has not been applied retroactively." (*Id.* at pp. 47–48.)

In contrast, the court in *Christianson* concluded the statute's text indicates section 1172.75 applies to stayed enhancements. The court cited subdivision (b), which requires the CDCR to identify all inmates " 'currently serving a term for a judgment that includes an enhancement described in subdivision (a).' " (*Christianson*, *supra*, 97 Cal.App.5th at p. 310.)

8

It concluded that "by [the statute's] plain language, all that is required for the CDCR to identify an inmate under section 1172.75, subdivision (b) is for the enhancement to be included in the abstract of judgment, regardless of whether it is imposed or stayed.  Had the Legislature intended for the language in subdivision (b) to limit the identification to those inmates that would necessarily be required to serve an additional term based on the enhancement, it certainly could have done so." (*Id*. at p. 312.)

The *Christianson* court also considered the word "verify" in subdivision (c), which states that the court must "verify that the current judgment includes a sentencing enhancement described in subdivision (a)." (§ 1172.75, subd. (c).)  The court concluded this language "suggests that the sentencing court is doing just that, verifying that the individual the CDCR identified is in fact an individual described by the statute, not looking to see if the inmate meets an additional requirement (i.e., that the enhancement is *imposed* and not stayed).  It does not follow logic or reason to read these two subdivisions together in a manner that would require the CDCR to identify a larger class of inmates—all those serving time on a judgment that include[s] a now invalid enhancement—only for the trial courts to then look at the same abstracts of judgment available to the CDCR to determine whether the previous court imposed additional time for, or stayed, the relevant enhancements." (*Christianson*, *supra*, 97 Cal.App.5th at p. 312.)

The *Christianson* court additionally noted that in section 1172.75, subdivisions (b)(1) and (2), and (c)(1) and (2), the Legislature explicitly differentiated between inmates currently serving time on a prior prison term enhancement and those who

9

are not, affording relief to both categories of inmates, but prioritizing the first group.  Thus, the court reasoned, "a plain reading of the statute, as a whole, at least suggests that the Legislature intended to use the term 'impose' in the broader sense, to include section 667.5, subdivision (b) enhancements that were both imposed and executed, and imposed and stayed." (*Christianson*, *supra*, 97 Cal.App.5th at p. 313.)

The *Christianson* court also found support for its conclusion in the legislative history, including that an earlier draft of the bill required the trial court to administratively amend judgments to remove the now-invalid sentence enhancements.  The Legislature revised that draft to instead require full resentencing and to include specific conditions, including that the resentencing must result in a lesser sentence unless the trial court finds doing so would endanger the public.  (*Christianson*, *supra*, 97 Cal.App.5th at pp. 314–315.)  This history, along with the Legislature's expressed aim of reducing sentences through the retroactive elimination of "a sentencing enhancement described as exacerbating 'existing racial and socio-economic disparities in our criminal justice system,' " led the *Christianson* court to conclude "it appears the Legislature intended to provide broad relief to all defendants impacted by the now invalid section 667.5, subdivision (b) enhancements."  (*Id.* at p. 314.)

The *Christianson* court rejected the *Rhodius* court's reasoning that a stayed enhancement does not increase a sentence.  Instead, the *Christianson* court reasoned that "[w]hen a punishment is stayed, as opposed to stricken, the trial court retains the ability to lift the stay and impose the term under certain circumstance[s], such as if an alternately imposed term is invalidated.  [Citation.]  Thus, a stayed sentence enhancement

10

remains as part of the judgment and continues to carry the potential for an increased sentence in certain circumstances, and removal of the stayed enhancement does provide some relief to the defendant by eliminating that potential." (*Christianson*, *supra*, 97 Cal.App.5th at p. 312.)

The Court of Appeal in *Saldana* also disagreed with *Rhodius*, observing that "[t]he presence of a stayed term or enhancement is not without significance; it is part of the sentence and remains available if its execution becomes necessary and proper for any legally sanctioned reason." (*Saldana*, *supra*, 97 Cal.App.5th at p. 1278; see also *Renteria*, *supra*, 96 Cal.App.5th at pp. 1282–1283 [stayed enhancements which appear in the abstract of judgment were "imposed" for purposes of § 1172.75].)

Similarly, the court in *Mayberry* disagreed with the premise that a section 667.5, subdivision (b) enhancement that was imposed and stayed has "no impact on [the] defendant's sentence" because "[i]mposed-but-stayed prior prison term enhancements carry the possibility of execution." (*Mayberry*, *supra*, 102 Cal.App.5th at p. 674.) The *Mayberry* court reasoned that striking stayed prior prison term enhancements "eliminates their impact from the 'originally imposed' sentence referred to in section 1172.75, subdivision (d)(1), resulting in a 'lesser sentence than the one originally imposed.' [Citations.]" (*Id*. at p. 675.)

Here, the People urge us to adopt the *Rhodius* court's reasoning and find that reading the word " 'impose' " in context means to " 'impose and execute.' " The People's argument focuses on section 1172.75, subdivision (d)(1)'s requirement that resentencing must result in a "lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement," and the People assert that a stayed enhancement

11

does not increase a sentence. The People also cite the *Rhodius* court's observation that the Legislature wanted to ameliorate the disproportionate impact of sentencing enhancements on Black and Latino individuals and reallocate funding from imprisonment to community-based services, which the *Rhodius* court determined could only be accomplished if the enhancements were actually generating longer periods of incarceration.

However, we agree with the courts in *Christianson*, *Saldana*, and *Mayberry* that eliminating a stayed prior prison term enhancement results in a lesser sentence than originally imposed. (*Christianson*, *supra*, 97 Cal.App.5th at p. 312; *Saldana*, *supra*, 97 Cal.App.5th at p. 1278; see also *Renteria*, *supra*, 96 Cal.App.5th at pp. 1282–1283.) We further agree with *Christianson* that reading "imposed" to include stayed prior prison term enhancements is most consistent with the plain language of the statute and the Legislature's apparent intent that the law provide "broad relief to all defendants impacted by the now invalid section 667.5, subdivision (b) enhancements." (*Christianson*, at p. 314.)

While the word "impose" " 'is often employed as shorthand' " to refer to enhancements that are imposed and executed, rather than imposed and stayed (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1125), we agree with the *Christianson* court that in section 1172.75, the Legislature simply required the CDCR and the sentencing court to identify and verify that the judgment includes a section 667.5, subdivision (b) enhancement, "regardless of whether it is imposed or stayed." (*Christianson*, *supra*, 97 Cal.App.5th at p. 312.) Had the Legislature intended to retroactively eliminate only enhancements that were imposed and executed, it could have explicitly done so, much as it specified

that inmates currently serving time based on an invalid enhancement be prioritized for relief.  It did not.  (*Christianson*, at p. 312; *Mayberry*, *supra*, 102 Cal.App.5th at p. 676.)

The *Rhodius* court compellingly reasons that eliminating stayed enhancements does not directly or immediately address the Legislature's concerns about the social and financial costs of ineffective and disproportionately imposed lengthy periods of incarceration.  However, since even a stayed enhancement has the potential to lengthen the amount of time served in custody, we do not find the legislative history regarding the underlying motivation for the law dispositive on the meaning of the term "imposed."  We conclude section 1172.75 applied in this case.

## DISPOSITION

The trial court's April 2023 order denying resentencing is reversed.  The matter is remanded to the trial court with instructions to recall Moore's sentence and resentence him in compliance with section 1172.75.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

I concur:

EDMON, P. J.

**Egerton, J., Concurring.**

In my view, the analysis and conclusions of our colleagues in the Fourth District, Division Two, in *People v. Rhodius* (2023) 97 Cal.App.5th 38, review granted Feb. 21, 2024, S283169, are well reasoned and persuasive. I recognize several courts have disagreed with *Rhodius*. Our Supreme Court will decide the issue.

One concern yet to be addressed is what seems to me significant unfairness in granting a full resentencing to a defendant whose prison priors were stayed, while denying that same relief to a defendant whose prison priors were stricken. This disparity appears to be at odds with the worthy goal of our Legislature and our courts to promote uniformity in sentencing. However, given the current weight of authority on the issue, and pending guidance from our high court, or action by our Legislature to clarify what it meant by the terms "*serving* a sentence" and "imposed," I concur in the result.


EGERTON, J.

1